JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Nathan Hobbs appeals from the judgment entered pursuant to a jury verdict finding him guilty of burglary, failure to comply, felonious assault and possession of crack cocaine. For the following reasons, we affirm in part, vacate in part and remand for resentencing.
 {¶ 2} At trial, the following facts were established: In the early morning of October 16, 1999, defendant broke into the home of Earl and Donna Robinson at 4425 Ingleside, Warrensville Heights, Ohio. Upon hearing Earl wake up, defendant jumped out of a bathroom window and fled in a dark-colored Cadillac Eldorado with a white top, which was parked in front of the house.
 {¶ 3} Officer Michael Soltis and Sergeant Randy Sobczyk of the Warrensville Heights Police Department responded to the scene. Earl described the suspect as a black male, in his mid-twenties, wearing blue jeans and braided hair. He also provided the police with a description of the vehicle he observed fleeing the scene.
 {¶ 4} Shortly after the police arrived at the scene, a vehicle matching the description given by Earl drove towards the house. The officers, in separate vehicles, pursued the vehicle at a high rate of speed. After a few minutes, the vehicle crashed into a house a few miles down from Earl's house. The suspect exited his vehicle and the officers chased him on foot. The defendant was apprehended 15 minutes later by other officers who arrived at the scene.
 {¶ 5} On December 7, 1999, defendant was indicted for these events in CR-384385 for one count of burglary, in violation of R.C. 2911.12 with a RVO specification and one count of failure to comply, in violation of R.C. 2921.331.
 {¶ 6} On December 18, 1999, at approximately 5:30 a.m., defendant broke into the home of Beverly Dorsey at 14013 Caine Avenue, Cleveland, Ohio. Beverly was woken up when she was stabbed by the defendant while she was laying in her bed. After stabbing Beverly, the defendant fled from the bedroom and jumped out of a living room window.
 {¶ 7} Beverly's next door neighbor, Ray Thompson, was contacted by Beverly's daughter and attempted to apprehend the defendant as the defendant tried to get into a white Mercury Marquis parked in Beverly's driveway; however, the defendant escaped on foot. Beverly called 911 and the Cleveland police arrived shortly thereafter.
 {¶ 8} Officer Richard Tusing of the Cleveland Police Department responded to the scene where he was given a physical description of the defendant by Beverly, Ray and Christy, Beverly's daughter.
 {¶ 9} Shortly after the police arrived at the scene, the defendant drove up to the crime scene claiming that the white car in the driveway was his and had just been stolen. He was wearing a red shirt and matched the physical description given by Beverly, Christy and Ray. He had braided hair and cuts on his hands. Christy and Ray identified him as the man who broke into Beverly's house and he was arrested.
 {¶ 10} On January 27, 2000, defendant was indicted for these events in CR-386314 for one count of aggravated burglary, in violation of R.C. 2911.11 with a RVO specification and one count of felonious assault, in violation of R.C. 2903.11 with a RVO specification. Defendant was also indicted in CR-389659 for one count of possession of crack cocaine, in violation of R.C. 2925.11 and one count of preparation of drugs for sale, in violation of R.C. 2925.07.
 {¶ 11} On May 13, 2002, the jury trial began. Prior to trial, all three cases were consolidated without objection.
 {¶ 12} The State first presented the testimony of the victim, Beverly Dorsey. She testified that on the morning of December 18, 1999, she awoke because she felt a sharp pain in her chest and saw the defendant standing next to her bed. She stated that she screamed to wake her daughter up, which caused the defendant to run into the living room and jump headfirst out of a window. She stated that while she was calling 911, the defendant tried to climb back inside the window, and that she and her daughter picked up a cocktail table to force the defendant back out. She testified that she went to Mt. Sinai Trauma Center to get treated for her stab wound. Finally, she testified that she did not get a good look at the defendant and would not be able to identify him.
 {¶ 13} The State then called Christy Dorsey, Beverly's daughter. She testified that she was sleeping in her mother's bed on the morning of December 18, 1999 and woke up when she heard her mother scream. She testified that she jumped out of the bed and saw the defendant run into the living room and jump out the window. She stated that she got a good look at the defendant when he tried to get back inside the house. She stated that she was able to identify the defendant to the police as the man who attacked her mother when the defendant came back to the house claiming that the white car parked in the driveway was his and had been stolen.
 {¶ 14} The State called Ray Thompson, Beverly's next door neighbor. He testified that he received a phone call from Christy on the morning of December 18, 1999, telling him that someone was trying to get them. He testified that he ran outside his house and grabbed the defendant as he was trying to get into his car parked in Beverly's driveway. He stated that after a brief struggle, the defendant fled on foot. He stated that he got a good look at the defendant and was able to give a description to the police. He also stated that he identified the defendant as the man he struggled with when the defendant came back to the house claiming that the white car parked in Beverly's driveway was his and had been stolen.
 {¶ 15} Officer Tusing of the Cleveland Police Department testified that he responded to the scene and spoke with Beverly, Christy, and Ray shortly after the incident occurred. He testified that he found a 30-day temporary tag in the backyard, footprints in the backyard and on the seat of the chair which was underneath a window of the house, and the knife used to stab Beverly in the driveway next to the car. He also testified that he discovered a bag of crack cocaine on the driver's seat of the vehicle. He stated that he spoke with the defendant after the witnesses identified him as the intruder. He stated that he advised the defendant of his Miranda rights. He stated that the defendant told him that the car in Beverly's driveway was his and that it had just been stolen at gunpoint by a man named Shorty. Officer Tusing also testified that he matched defendant's boot with the boot prints found at the scene.
 {¶ 16} The State next presented the testimony of the victim, Earl Robinson. He testified that at approximately 3:00 a.m. on October 16, 1999, he awoke when his son screamed that there was an intruder in the house. He stated that he ran outside his bedroom and saw the defendant run into the bathroom and jump out the window. He stated that he ran outside the house and saw the defendant drive away in a black Cadillac. He stated that he chased the car on foot for about six houses before he went back to his house and called the Warrensville Heights police. He testified that shortly after the police arrived at the scene, he saw the black Cadillac driving down the street and the police officers gave chase in their cruisers. Finally, he testified that he found a pager underneath the window that the defendant had escaped from. On cross-examination, defendant admitted that he did not see the defendant's face inside the house. On redirect, he stated that he was able to identify the defendant because he was in the black Cadillac that was seen leaving his house and then, several minutes later, driving past his house.
 {¶ 17} The State called Charles Davis who testified that he lent a dark gray Cadillac Eldorado to the defendant on October 15, 1999. He testified that the defendant appeared at his house at approximately 4:00 a.m. on October 16, 1999, in only his underwear and socks, and stated that he had been robbed/carjacked.
 {¶ 18} Officer Soltis and Sergeant Sobczyk of the Warrensville Police Department testified that they responded to the scene and spoke with Earl within minutes of the incident. Both testified that Earl gave a physical description of the defendant and the vehicle used by the defendant to escape. Both testified that as they were leaving the scene, a car drove down the street, which Earl identified as the vehicle driven by the defendant. Both stated that they got into their separate cruisers and gave chase. Officer Soltis and Sergeant Sobczyk testified that they chased the defendant on foot after the defendant crashed the Cadillac into a house. Sergeant Sobczyk testified that the defendant started to strip off his clothing as he was running away from the officers. He further testified that another officer, called in to help, actually apprehended the defendant and that he was able to identify the defendant as the male he was chasing.
 {¶ 19} Sergeant Darren Senft of the Warrensville Heights Police Department testified that he was called by the police to assist in the pursuit of the defendant. He testified that while patrolling the area, he saw the defendant walking down a driveway with only his underwear and socks on. He stated that he approached the defendant and took him into custody.
 {¶ 20} Detective Timothy Entenok of the Cleveland Police Department testified that he was assigned to the Dorsey case and that he talked to the defendant and advised him of his Miranda rights. He testified that defendant told him that his car had been hijacked by a man named Shorty, and that it must have been Shorty that committed the burglary with his car. Detective Entenok stated that defendant did not file a police report regarding the car jacking. Finally, Detective Maurice Clark of the Warrensville Heights Police Department testified that he talked to the defendant on the night of the Robinson burglary and advised him of his Miranda rights. Detective Clark testified that defendant told him that his car had been hijacked by a man similar in appearance to him, and that it was this man, and not him, that must have committed the burglary with his car. Detective Clark stated that defendant did not file a police report regarding the car jacking. He also testified that during his investigation he determined that defendant was the owner of the pager found at the Robinson home.
 {¶ 21} On May 16, 2002, the jury returned a guilty verdict against defendant on all charges and specifications except for the preparation of drugs for sale count in CR-389659.
 {¶ 22} On June 13, 2002, the trial court sentenced defendant as follows: In CR-384385, defendant was sentenced to eight years on the burglary count plus a consecutive seven-year term on the RVO specification to run concurrent with one year on the failure to comply count. In CR-386314, defendant was sentenced to ten years on the burglary count plus a consecutive ten-year term on the RVO specification to run consecutive with five years on the felonious assault count. In CR-389659, defendant was sentenced to one year on the possession count. The sentences in each case were ordered to be served concurrently to each other. The total sentence in all three cases is 25 years.
 {¶ 23} Defendant appeals his conviction and sentence and asserts 14 assignments of error for our review. We will address defendant's assignments of error out of order where it is appropriate for discussion.
"I. The trial court improperly pressured the jury to hurry and reach a verdict."
 {¶ 24} In Assignment of Error I, defendant argues that the trial court improperly pressured the jury to reach a hasty verdict. Specifically, defendant points to the following statements made by the trial judge:
 {¶ 25} "Now I'm hopeful that we can do this today because what we're going to do is we're going to in a moment or two adjourn, you're going to the jury room, you're going to select a foreperson and then you're going to either go to lunch or go downstairs, hopefully which I think is a better idea, get lunch and eat and deliberate at the same time.
 {¶ 26} "I am hopeful that we may have a verdict in this case this afternoon or this evening. The Court has a commitment tomorrow. It's not clear whether the attorneys and the Court can be present tomorrow so I would hope that we can get a verdict today. If we can't there is a possibility that we might have to come back either tomorrow or Monday. So we're going to give you plenty of time to deliberate these issues today. (Tr. 489-490).
 {¶ 27} "In the event we don't have a verdict and you go home, you may not discuss this case with anyone or the status of your deliberations. So we might see you in the hallway, we might nod and say hello, but until we have a verdict you cannot discuss the case. So keep that in mind.
 {¶ 28} "I'm going to ask you to go to the jury room now, select a foreperson and decide what you want to do in terms of lunch. I'm hopeful you might go downstairs for 15 minutes, grab lunch, bring it up. We'll have the exhibits and verdict forms and instructions in the jury room waiting for you. That's what I would suggest, but adjourn now to the jury room, select a foreperson and make that determination. If you want to take an hour and not think about the case I suppose we can do that, but it's going to set your deliberations back.
 {¶ 29} "And I would ask, you know, the attorneys to be available, you know, until late this afternoon. If we can wrap this case up today, I'd like to do it." (Tr. 491-492).
 {¶ 30} A defendant is entitled to have the jury deliberations be undisturbed and uninterfered with. Bennett v. State (1894), 4 Ohio C.D. 129. Accordingly, it is reversible error for a judge to hold a conversation with the jury which might influence their verdict, and prevent the defendant from having a fair trial. Id.
 {¶ 31} Here, reading the comments in their entirety, the judge merely instructed the jury that he was "hopeful" that a decision could be reached that day. He did not urge the jury to hurry its decision and stated that they would be permitted to go home and come back the next day or another day if they could not reach a verdict. He did not comment on the defendant's guilt or the strength of the State's case. See State v.Roberts (Apr. 3, 1975), Cuyahoga App. No. 33141. Although the court should have been more careful with its comments, particularly during such a critical stage of the trial, there is no evidence that defendant was prejudiced by the trial court's statements. Defendant was acquitted of the preparation of drugs for sale count in CR-389659, which indicates that the jury seriously considered the charges brought against the defendant and did not reach a hasty or thoughtless verdict. Assignment of Error I is overruled.
"II. The trial court plainly erred under Crim.R. 52 when it allowed the jury to consider other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Mr. Hobbs' rights under Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."
 {¶ 32} In Assignment of Error II, defendant argues that joinder of the Dorsey burglary charge with the Robinson burglary charge was improper under Evid.R. 404(B). We disagree.
 {¶ 33} Crim.R.8 allows for the joinder of multiple charges if each offense is based upon "the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan or are part of a course of criminal conduct." The decision concerning the joinder of offenses is a matter which lies within the sound discretion of the trial court. State v. Strobel (1988), 51 Ohio App.3d 31.
 {¶ 34} A defendant bears the burden of proving that he was prejudiced by the joinder of the multiple offenses. State v. Torres
(1981), 66 Ohio St.2d 340. Prejudice is not demonstrated if one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct.State v. Lott (1990), 51 Ohio St.3d 160, 163. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question. Statev. Lowe (1994), 69 Ohio St.3d 527.
 {¶ 35} Here, the Robinson and Dorsey burglaries are of the same or similar character. Both involved burglaries of residences in the same neighborhood and entry was made through a window. Both burglaries involved the intruder escaping by diving head first out of a window. Both burglaries involved the intruder returning to the residence within a short period of time after committing the offenses while the police were still on the scene. Both burglaries involved a suspect telling the police that he was in the area of the burglarized homes because his vehicle had been car-jacked by a man similar in appearance to him.
 {¶ 36} In addition, the evidence as to both burglaries was simple and direct. As to the Dorsey burglary, Christy Dorsey and Ray Thompson both gave a physical description of the defendant to the police and later identified him as the intruder when he returned to the Dorsey home. Defendant's boot matched the footprints of the intruder found on the chair and in the backyard of the Dorsey home. Defendant claimed ownership of the car parked in the Dorsey's driveway.
 {¶ 37} Regarding the Robinson burglary, Earl Robinson gave a physical description of the defendant and the vehicle he fled in to the police and later identified him as the intruder when he returned to the scene and drove past the Robinson home in the same car. Defendant was seen stripping off his clothing as he fled on foot from the police officers and was apprehended shortly thereafter with only his underwear and socks on. Defendant's pager was found directly beneath the bathroom window through which the suspect had escaped. Accordingly, the trial court did not err by joining the Robinson and Dorsey offenses for trial.
 {¶ 38} Assignment of Error II is overruled.
"III. The trial court committed plain error when it permitted the State to introduce evidence of Mr. Hobbs' exercise of post-Miranda
silence."
 {¶ 39} In Assignment of Error III, defendant claims that he was unfairly prejudiced when the State introduced evidence of his post-Miranda silence. Specifically, defendant argues that the State improperly elicited testimony that defendant failed to file a police report regarding his alleged car-jackings.
 {¶ 40} In Doyle v. Ohio (1976), 426 U.S. 610, 619, the United States Supreme Court held that the State may not seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings. However, a defendant who voluntarily talks with the police has not relied upon the implied promise in theMiranda warnings that his silence cannot be used against him. State v.Gillard (1988), 40 Ohio St.3d 226, 231; State v. Osborne (1977),50 Ohio St.2d 211, 216; State v. McKinnon (June 10, 1992), Ross App. No. 90CA1744. Accordingly, if an accused voluntarily offers information to police, "his toying with the authorities by allegedly telling only part of his story is not protected by Miranda or Doyle."[1] Gillard, supra, at 231-232; State v. Lucaj (May 17, 1990), Cuyahoga App. No. 56933.
 {¶ 41} Here, Detective Timothy Entenok of the Cleveland Police Department testified that he talked to the defendant on the night of the Dorsey burglary and advised him of his constitutional rights. Detective Entenok testified that defendant expressed a willingness to talk and told him that his car had been hijacked by a man named Shorty, and that it must have been Shorty that committed the burglary with his car. Detective Entenok then testified that defendant did not file a police report regarding the car jacking.
 {¶ 42} Next, Detective Maurice Clark of the Warrensville Heights Police Department testified that he talked to the defendant on the night of the Robinson burglary and advised him of his constitutional rights. Detective Clark also testified that defendant willingly told him that his car had been hijacked by a man similar in appearance to him, and that it was this man, and not him, that must have committed the burglary with his car. Detective Clark also testified that defendant did not file a police report regarding the car jacking.
 {¶ 43} Defendant argues that the testimony by Detectives Entenok and Clark violates Doyle. We disagree. The testimony by the two detectives did not use defendant's post-arrest silence against him because defendant did not remain silent. Rather, defendant freely gave an exculpatory statement. Since defendant did not remain silent, but chose to give his version of the events, it was not improper for the State to elicit testimony from the detectives about his statements. Ibid. Accordingly, Doyle was not violated here.
 {¶ 44} Assignment of Error III is overruled.
"IV. The trial court plainly erred when it permitted the State to introduce hearsay evidence regarding the investigation into the registration of the pager found at the Robinson residence and the subsequent hearsay identification by a non-witness that the pager belonged to Mr. Hobbs."
 {¶ 45} In Assignment of Error IV, defendant argues that the admission of hearsay statements by a non-witness denied him due process of law and the right to confront his accuser. Specifically, defendant points to the testimony of Detective Clark regarding statements made by the owner of Dale Communication Center that defendant was the owner of the pager found at the Robinson home.
 {¶ 46} At trial, Detective Clark testified that he contacted U.S. Pager and learned that the pager found at the Robinson home was registered to a person named "Greg Lawson" and was being serviced through the Dale Communication Center. He further testified that he prepared a photospread and showed it to the owner of Dale Communication Center, who identified the defendant as the "Greg Lawson" to whom that pager was registered.
 {¶ 47} We agree with the defendant that Detective Clark's testimony regarding the owner of Dale Communication Center's identification of the defendant as the owner of the pager should not have been admitted into evidence. Evid.R. 801 provides a general prohibition against the admission of out-of-court statements since the defendant loses his right of confrontation. However, we are unable to agree that the error was materially prejudicial to the defendant. After a thorough review of the record, we have no doubt that the remaining, properly introduced evidence overwhelmingly establishes defendant's guilt. SeeDelaware v. Van Arsdall (1986), 475 U.S. 673, 681; State v. Williams
(1983), 6 Ohio St.3d 281. Because this error was harmless beyond a reasonable doubt, we find defendant's contention not well taken. Assignment of Error IV is overruled.
"V. The failure to include the written jury instructions in the record deprived Mr. Hobbs of his right to due process by impairing his right to an effective first appeal as of right."
 {¶ 48} In Assignment of Error V, defendant argues that the trial court committed reversible error by failing to include the written jury instructions in the record. Specifically, defendant argues that the trial court's failure to preserve the written jury instructions violates R.C.2945.10(G) and denies him due process of law because he is unable to review the instructions for error on appeal. We disagree.
 {¶ 49} R.C. 2945.10(G) states that "written charges and instruction shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the paper of the case." However, reversal is not warranted if the defendant is unable to demonstrate in what manner he was prejudiced by the trial court's failure to include the written jury instructions with the record. See State v.Warner (1990), 55 Ohio St.3d 31; State v. Gaines (Nov. 16, 2000), Cuyahoga App. No. 77695; State v. Walton (Oct. 19, 2000), Cuyahoga App. No. 76302; State v. Cruz (Jan. 27, 2000), Cuyahoga App. No. 75723; Statev. Lee (Sept. 7, 2000), Cuyahoga App. No. 77010; State v. Hardy (Feb. 17, 2000), Cuyahoga App. No. 75778.
 {¶ 50} Here, we cannot say the absence of the written instructions from the record is reversible error. A review of the record reveals that the trial court fully and completely instructed the jury prior to their deliberations without objection by either party. (Tr. 467-490). Moreover, both parties had the opportunity to review the court's proposed written instructions and neither party identified an error in the written instructions, nor alleged a variation between the court's oral instructions and the written instructions that had been reviewed previously. (Tr. 490). Accordingly, we cannot find that the trial court's failure to include the written jury instructions in the record on appeal constituted reversible error.
 {¶ 51} Assignment of Error V is overruled.
"VI. The conviction for burglary of the Robinson residence as alleged in Count One of CR-384385 was not based on sufficient evidence of an intention to commit a crime within the Robinson residence.
"VII. The burglary conviction in Count One of CR-384385 is against the manifest weight of the evidence."
 {¶ 52} In Assignments of Error VI and VII, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction for the Robinson burglary and that his conviction for the Robinson burglary is against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
 {¶ 53} The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 54} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340. Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v.Walker (Apr. 11, 2002) Cuyahoga App. No. 79767.
 {¶ 55} Here, defendant was convicted of burglary, in violation of R.C. 2911.12, which states, in pertinent part, "no person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure any criminal offense."
 {¶ 56} At trial, the jury heard Earl Robinson testify that he was woken up by his son yelling that someone was inside his house. He testified that he observed a male resembling the defendant jump out of the bathroom window and then drive away in a black Cadillac Eldorado, which had been parked in front of his house. He testified that he found a pager, later discovered to be registered to the defendant, directly underneath the window through which the intruder had escaped. He also testified that shortly thereafter, he observed the black Cadillac return to his house with the same man inside and that the police engaged in pursuit of that vehicle and apprehended the defendant.
 {¶ 57} Defendant argues that the State failed to produce any evidence that he entered the home with the purpose of committing a criminal offense. We disagree. Since the defendant's subjective intent with which he trespassed into the Robinson's home was known only to him, the jury had to determine his intent through reasonable inferences based upon the surrounding facts and circumstances. State v. Flowers (1984),16 Ohio App.3d 313, 314. Upon careful review of the testimony and evidence presented at trial, we find there was ample evidence upon which the jury could determine that defendant entered the Robinson's home with intent to commit a criminal offense therein.
 {¶ 58} Defendant also argues that Mr. Robinson's identification of him as the intruder lacks credibility since he did not observe him during the break-in. We disagree. At trial, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the their judgments. See State v. Lawrence (Dec. 1, 1999), Lorain App. No. 98CA007118.
 {¶ 59} Accordingly, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of the Robinson burglary. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit.
 {¶ 60} Assignments of Error VI and VII are overruled.
"XIII. Mr. Hobbs was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 61} In Assignment of Error XIII, defendant argues that his trial counsel was deficient in various respects and that he was denied his constitutional right to the effective assistance of counsel. We disagree.
 {¶ 62} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. Strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.Strickland, supra.
 {¶ 63} Defendant first argues that his trial counsel performed deficiently by failing to sever the Robinson burglary from the Dorsey burglary. We disagree. In Assignment of Error II, we held that the multiple offenses were properly joined since they were similar crimes and demonstrated defendant's course of criminal conduct. Since the cases were properly joined, defendant's counsel was not deficient for failing to object to the joinder.
 {¶ 64} Next, defendant claims that he was prejudiced when his trial counsel failed to object to the other errors assigned in his brief. Based upon our decision in this opinion, defendant has not shown that he was prejudiced by any of his attorney's actions or inactions or that any such failures affected the outcome of the trial. Therefore, defendant was not denied effective assistance of counsel on that basis.
 {¶ 65} Assignment of Error XIII is overruled.
"X. The trial court improperly considered as a factor weighing in favor of a more stringent sentence that Mr. Hobbs decided to go to trial."
 {¶ 66} In Assignment of Error X, defendant argues that the trial court imposed a more severe sentence because he elected to go to trial rather than enter a guilty plea. Specifically, defendant points to the following statements by the trial court:
 {¶ 67} "I question, you know, since you realize that these crimes were committed, and since you realize that although you don't have a recollection that you were involved, why you took it this far, why you tried these cases. (Tr. 522).
 {¶ 68} "You showed no remorse to the victims prior to today. And you were involved in a very cynical approach to the resolution of these three cases. (Tr. 523).
 {¶ 69} "And I want the walker ordered taken away from him in county jail. I want him put in general population, and I don't want him receiving any medical services that aren't ordered by a physician, because he's been malingering, and it's over, baby. This is what happens when you gamble and lose." (Tr. 535).
 {¶ 70} A defendant is guaranteed the right to a trial and should never be punished for exercising that right. State v. O'Dell (1989),45 Ohio St.3d 140, 147. Thus, the augmentation of sentence based upon a defendant's decision to go to trial rather than plead guilty is improper. State v. Scalf (1998), 126 Ohio App.3d 614, 620. This rule applies "no matter how overwhelming the evidence of [defendant's] guilt."United States v. Derrick (C.A. 6, 1975), 519 F.2d 1, 3.
 {¶ 71} Although the court's impatience with the defendant may be understandable given the circumstances, we find that the above quoted statements clearly give rise to the inference that defendant may have been punished more severely because of his assertion of the right to trial by jury. Accordingly, we conclude that the sentence imposed on the defendant must be vacated.In light of our determination of this assignment of error, we do not reach defendant's remaining assignments of error since they all relate to the trial court's imposition of sentence.
 {¶ 72} Defendant's conviction is affirmed; sentence vacated, and the matter is remanded for resentencing.
ANNE L. KILBANE, P.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] Indeed, in footnote 11 to the Doyle opinion, the United States Supreme Court expressly set forth such an exception: "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation, the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest."